Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 9?00 C 4001 | **DATE** | 1/30/2002 |
| **CASE TITLE** | Tucker vs. Cassiday, Schade & Gloor | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** We grant Cassiday's motion (Doc 72-1) for summary judgment.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JAN — date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | CLERK | | |
| SCT | courtroom deputy's initials | 02 JAN 30 PM 1:18 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BYRDIE BROWNRIDGE TUCKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 99 C 4001 |
| ) | |
| CASSIDAY, SCHADE & GLOOR, ) | |
| ) | |
| Defendant. ) | |

DOCKETED JAN 3 1 2002

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter is before the court on the motion for summary judgment of Defendant Cassiday, Schade, & Gloor. For the reasons set forth below, the motion is granted.

## BACKGROUND

Plaintiff Byrdie Brownridge Tucker ("Tucker"), an African-American woman, is an attorney formerly employed by Defendant Cassiday, Schade, & Gloor ("Cassiday"). She came to the firm in 1995 after leaving a position as in-house counsel to a client of Cassiday's. Tucker's in-house activities centered on corporate and employment matters; her practice at Cassiday, conversely, was to be primarily in litigation, including products liability and medical malpractice cases.



Beginning in 1996, Tucker contends that she was subjected to discrimination at her workplace. She gives accounts of several statements made to her that she alleges were discriminatory toward her race (African-American), religion (Body of Christ), or age (44 years old at the time the complaint was filed). She also claims that she was treated differently than the younger white associates at the firm in the amount and quality of cases that she was assigned. Finally, Tucker asserts that she was singled out in that she, unlike other associates, was required to acquire new business for the firm and to prepare a business plan detailing her past and future efforts in that regard.

In October 1998, Cassiday terminated Tucker's employment. She filed a complaint with the EEOC in December of that year, claiming that the firm had subjected her to unlawful discrimination. In March 1999, the EEOC dismissed the charge, precipitating Tucker's filing of a five-count complaint in this court. Three of the counts were dismissed in July 2000, leaving only the two relating to Title VII violations based on racial and religious discrimination and claims under the Age Discrimination in Employment Act. Cassiday now moves for summary judgment of these two remaining counts.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548 (1986). The burden then shifts to the nonmoving party to show through specific evidence that a triable issue of fact remains on issues on which the nonmovant bears the burden of proof at trial. Id. The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence. Id. The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. Bay v. Cassens Transport Co., 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Insolia v. Philip Morris, Inc., 216 F.3d 596, 599 (7th Cir. 2000); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). With these principles in mind, we consider Cassiday's motion.

## DISCUSSION

Before we reach the merits of Cassiday's motion, we must address the issue of which of Tucker's allegations we may properly consider. In Illinois, plaintiffs in Title VII and ADEA cases must file a complaint with the proper administrative agency within

300 days of the alleged discriminatory act. 42 U.S.C. § 2000e-5(e)(1); Sharp v. United Airlines, Inc., 236 F.3d 368, 372 (7th Cir. 2001). Tucker filed her complaint on December 21, 1998, so the 300-day period would extend back to February 25, 1998. However, neither side agrees that this date is the correct measure for this case.

Tucker attempts to extend the 300-day time line by invoking the continuing violation doctrine. But the doctrine, which allows a plaintiff to get relief for time-barred acts by linking them as a single act with acts occurring within the limitations period, does not apply unless it was not reasonable for the plaintiff to perceive the discrimination without repetition or cumulation. Shanoff v. Illinois Dept. of Human Servs., 258 F.3d 696, 703 (7th Cir. 2001). In this case, Tucker stated repeatedly that she considered the actions of Cassiday discriminatory when they occurred. As such, she cannot rely on the continuing violation doctrine.

Cassiday, on the other hand, claims that Tucker is precluded from bringing any action at all against it because by her own admission she was alerted to possible discriminatory motives as early as 1996 but did not file her EEOC complaint until December 1998. We are not aware of any such rule, nor do the cases to which Cassiday cites support their conclusion. Rather, they stand for the proposition that plaintiffs who wait more than 300 days past the first occurrence that they perceive to be discriminatory cannot invoke the continuing violation doctrine to enlarge the time frame in which their

complaint can operate. See Shanoff, 258 F.3d at 703; Hardin v. S.C. Johnson & Sons, Inc., 167 F.3d 340, 344 (7th Cir. 2001); Moskowitz v. Trustees of Purdue Univ., 5 F.3d 279, 281 (7th Cir. 1993); Huff v. Sheahan, 2001 U.S. Dist. LEXIS 14656, at *37 (N.D. Ill. Sept. 19, 2001); see also, e.g., Hall v. Bodine Electric Co., — F.3d —, 2002 WL 15815 (7th Cir. 2002); Galloway v. Gen. Motors Serv. Parts Operations, 78 F.3d 1164, 1167 (7th Cir. 1996). Thus, Tucker is not precluded from filing any complaint at all but only from pointing to events outside the statutorily provided period. Because neither party has offered a legitimate reason to deviate from the 300-day framework, we limit our inquiry to events occurring after February 24, 1998.

Now that we have identified the appropriate time frame, we look to the evidence that Tucker has advanced of Cassiday's alleged discrimination. Evidence of employment discrimination can conceivably appear in two forms: direct or indirect. Mills v. Health Care Serv. Corp., 171 F.3d 450, 454 (7th Cir. 1999) Tucker insists that she is the one of the rare plaintiffs who can demonstrate direct evidence of unlawful discrimination. Direct evidence of discrimination means that proof of a particular fact does not rely on inference or presumption. Id. However, we cannot test whether this is so, because all of the incidents that she asserts amount to direct evidence occurred prior to February 1998, the commencement of the 300-day period. If she is to show discrimination at all, then, she must show it through indirect evidence. We therefore

move on to the analysis of indirect evidence of discrimination first enumerated in McDonnell-Douglas v. Green, 93 S.Ct. 1817 (1973).

Under McDonnell-Douglas, a plaintiff who seeks to avoid summary judgment must first show four things: (1) membership in a protected class; (2) performance that met the employer's legitimate expectations; (3) an adverse employment action; (4) a similarly situated employee outside the protected class who was treated more favorably. Curry v. Menard, Inc., 270 F.3d 473, 477 (7th Cir. 2001). If the plaintiff can show the existence of each of these four factors, the burden shifts to the employer to advance a legitimate business reason for the adverse employment action. Id. The burden then rests back on the plaintiff to show that the employer's reason is pretextual, i.e., that the employer acted for a reason other than the proffered one. Id.

In the Seventh Circuit, a court need not consider whether a plaintiff has made an adequate showing of a prima facie case if there is insufficient evidence of pretext. See Olsen v. Marshall & Ilsley Corp., 267 F.3d 597, 600-01 (7th Cir. 2001). Our obligation under Title VII and the ADEA is only to assess whether an employer acted with unlawful motives, not to comment on whether a lawful employment decision was a sound one. Jordan v. Summers, 205 F.3d 337, 344 (7th Cir. 2000). Cassiday claims that Tucker was terminated because her productivity, efficiency, and file organization skills were not adequate. (Def.'s Exh. A). In addition, Cassiday cites Tucker's need

for supervision on assignments outside the corporate and employment areas, in which she apparently held her own. (Def's Exhs. B, C, and D). Tucker's own deposition testimony states that in late 1997, the partner who had been supervising Tucker's work was leaving the firm and that there would not be anyone who would have the time to supervise Tucker on the level that the firm apparently thought necessary. (Pl's Dep. Tr. p. 605, ll. 9-24, p. 606, ll. 1-3). Cassiday avers that it was these shortcomings that brought about Tucker's termination, not her race, age, or religion.

The ball is in Tucker's court, then, to show that Cassiday's reasons are a sham. To meet her burden, Tucker must "specifically refute the facts which allegedly support the employer's proffered reasons." Mills v. First Federal Sav. & Loan Ass'n of Belvidere, 83 F.3d 833, 845 (7th Cir. 1996). Tucker does not allege that the shortcomings Cassiday has offered were not true (in fact, she noted their existence in self-evaluations and offers as evidence the performance evaluations that include mention of them). Rather, she asserts that Cassiday should have placed more emphasis on the positive traits identified in her performance evaluations. Beyond the fact that an evaluation that includes both positive and negative comments is neither internally inconsistent nor legally insufficient to support a legitimate business reason to terminate an employee, Tucker has invited us to engage in precisely the sort of second-guessing

of an employer's decisionmaking that is not the province of the judiciary. Wollenburg v. Comtech Mfg. Co. 201 F.3d 973, 976 (7th Cir. 2000); Mills, 83 F.3d at 846.

Tucker also makes a great deal out of the July 1995 memo stating that she would never be made a partner at Cassiday. Her affidavit states that she never knew of that condition of her employment until the memo was produced in discovery for this suit. However, in her deposition, Tucker stated that she was told of that condition before she took the job at Cassiday and that the condition was reiterated in February 1998 (Pl. Dep. 128-29, 143). It is well settled that a party cannot create a genuine issue of material fact by making assertions in an affidavit that contradict statements in earlier depositions. See, e.g., Russell v. Acme-Evans Co., 51 F.3d 64, 67-68 (7th Cir. 1995).

Even though, as stated above, we do not need to address whether Tucker has made a prima facie showing, her showing on two of the four needed factors is wanting. For the same reasons that Tucker cannot show pretext, she cannot show that she was meeting Cassiday's legitimate expectations of her work performance. Olsen, at 601 (noting substantial overlap of considerations involved in assessing second element of prima facie case and pretext of employer's proffered reasons). In addition, her papers are devoid of a similarly situated employee who did not belong to the same protected classes that she did, thus preventing her from satisfying the fourth element of her initial burden. Discrimination by its very nature involves treating one employee better than

another, for impermissible reasons. Carson v. Bethlehem Steel Corp., 82 F.3d 157, 158 (7th Cir. 1996). Without another employee to provide a point of reference, we cannot perform a reasonable comparison of the quality of treatment Cassiday gave its employees, let alone whether any difference was based on racial, religious, or age-based characteristics. Tucker attempts to explain away this deficiency by stating that under Mills, she does not need to show the fourth factor of a prima facie case. Her reliance is misplaced. Mills was a case in which the McDonnell-Douglas test was modified in a reverse discrimination case to avoid the unwanted result that a victim of discrimination who was not in a racial minority could never bring suit under Title VII. Furthermore, in that case the plaintiff made an adequate showing of the fourth element. Therefore, there is no reason in this case to use a standard other than that stated above.

We are left, then, with Tucker's claim of religious discrimination. A prima facie case of religious discrimination consists of three elements: first, a bona fide religious practice that conflicts with an employment requirement, second, the employer's awareness of the practice, and third, an adverse employment action taken because of the practice was the basis for the adverse employment decision. Anderson v. USF Logistics, Inc., 274 F.3d 470, 478 n.2 (7th Cir. 2001), citing EEOC v. United Parcel Serv., 94 F.3d 314, 317 (7th Cir. 1996). Tucker cannot get past the first element. She demonstrates no religious practice that conflicted with her employment requirements.

In fact, she acknowledged in her deposition that none of her religious practices were impacted in any way by her employment or her employers. (Pl. Dep., pp. 288, 291, 293). This acknowledgment is fatal to her claims in Count III.

## CONCLUSION

For the foregoing reasons, we grant Cassiday's motion for summary judgment.

_____
Charles P. Kocoras
United States District Judge

Dated: _____January 30, 2002_____